**LOCKE, Superintendent for Five Civilized Tribes, v. McMURRY et al.**

**McMURRY et al. v. LOCKE, Superintendent for Five Civilized Tribes.**

(Circuit Court of Appeals, Eighth Circuit. March 5, 1923.)

Nos. 6188, 6189.

1. Statutes ⬤⇒219—Departmental construction adhered to for years not overruled, unless clearly wrong.

The ruling of the Department of the Interior, construing Act May 27, 1908, to pass the lands of an allottee on his death to his heirs without restrictions, having been acted on for nine years as a rule of property, will not be set aside, except for the most cogent reasons, and only on a showing that such construction was clearly wrong.

2. Indians ⬤⇒16(3)—Lease of unrestricted lands of full-blood Creek Indian made under orders of probate courts, and approval of Secretary of Interior not required.

Under Acts of March 1, 1901, May 27, 1902, and May 27, 1908, relating to lands and allotments of members of the Five Civilized Tribes, on the death of a half-blood Creek allottee without issue, any restrictions theretofore existing on his allotment were removed by the act of 1908, and his mother, a full-blood Indian and therefore incompetent, was under the guardianship of the county court, and a lease of land inherited by her could be made only by a guardian appointed by that court and with its approval; nothing in the acts requiring a lease of unrestricted land by a full-blood Creek to be approved by the Secretary of the Interior.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Suit in equity by Joe McMurry and another, as guardians of Lucinda Pittman, against Victor M. Locke, Jr., as superintendent for the Five Civilized Tribes, and certain lessees. The defendant lessees, having paid into court funds in suit, were dismissed. From a decree (284 Fed. 181) adjudging plaintiffs entitled to one-half the funds claimed,

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

both parties appeal. Decree for plaintiffs affirmed, and that for defendant Locke reversed.

J. D. Simms, of Muskogee, Okl. (Grant Foreman, of Muskogee, Okl., on the brief), for plaintiffs.

O. H. Graves, Sp. Asst. U. S. Atty., of Pryor, Okl. (Frank Lee, U. S. Atty., of Muskogee, Okl., on the brief), for defendant.

Before STONE, Circuit Judge, and TRIEBER and JOHNSON, District Judges.

TRIEBER, District Judge. This is an action by Joe McMurry and Albert Davidson, as guardians of Lucinda Pittman, to enjoin the defendant Locke, as superintendent for the Five Civilized Tribes, from receiving or attempting to receive or collect royalties under certain oil and gas leases covering the surplus allotment of Robert Pittman, Jr., and asking judgment against the lessees of the land involved, for the royalties and rentals then due. Answers were filed by all the defendants, but it is unnecessary to set them out herein, as the cause was submitted on an agreed statement of facts. The decree adjudged that plaintiffs were entitled to one-half of the royalties, and the lessees having paid into court the amounts due from them for royalties, and the $60,000 for the purchase of the lease having been deposited for the benefit of the party adjudged finally to be entitled thereto, were dismissed. Both parties appealed, each claiming to be entitled to all the royalties and lease moneys.

The agreed statement of facts, on which the cause was heard, so far as material and necessary for a decision, is:

" * * * That Robert Pittman, Jr., * * * enrolled as a half-blood Creek Indian, * * * and * * * allotted to him as a part of his surplus land, * * *" and that his guardian "made oil and gas leases covering the above-described land [part of the surplus allotment] on April 1, 1907, and that the leases were approved by the Secretary of the Interior on May 22, 1907. * * * On August 2, 1912, Dana H. Kelsey, predecessor in office of Victor M. Locke, Jr., advised the guardian of Robert Pittman, Jr., a minor, that all restrictions on the land had been removed and that thereafter settlement for the royalty under the terms of the lease should be made to the guardian of said minor, or to the minor himself when he became of age, * * * and at the same time said Dana H. Kelsey, superintendent and predecessor of Victor M. Locke, Jr., defendant herein, notified the lessee oil company that restrictions had been removed, * * * and at the same time notified the Southwestern Surety Insurance Company, being the company having executed the bond to guarantee the payment of all royalties and rentals under the terms of said lease, that restrictions had been removed; * * * that on October 8, 1919, the said Robert Pittman, Jr., died, single, unmarried and without issue, and that at the time of his death he was a resident of Delta county, Colo.; that he was living with his father, Robert Pittman, Sr.; * * * that at the time of the death of Robert Pittman, Jr., Robert Pittman, Sr., the father, and Lucinda Pittman, the mother, were living separate and apart, having been divorced by a decree of divorce in the district court of El Paso county, Colo., on February 24, 1911, and that thereafter the said Robert Pittman, Sr., the father, and Lucinda Pittman, the mother, of Robert Pittman, Jr., lived separate and apart, and were so living separate and apart on October 8, 1919, being the date of the death of Robert Pittman, Jr., and that the said Lucinda Pittman was on said October 8, 1919, living in Tucson, Ariz., and at that time her legal residence was in Muskogee, Okl.;

\* \* \* that the said Robert Pittman, Sr., is a white man and a non-citizen of the Creek Tribe of Indians; that he is without Indian blood, and was never adopted as a member of the tribe, and that Lucinda Pittman, the mother of Robert Pittman, Jr., is a full-blood member of the Creek Tribe of Indians, and duly enrolled as such; \* \* \* that the amount of royalty accruing since the date of the death of Robert Pittman, Jr., up to the date of filing of complaint, is the sum of $10,864.05; \* \* \* that the regulations prescribed by the Secretary of the Interior for the purpose of carrying into effect the provisions of the act of Congress approved April 26, 1906 [34 Stat. 267], \* \* \* with regard to the leasing for oil and gas and the collection of the royalty is as follows: 'All leases executed and approved heretofore or hereafter on land from all of which restrictions against alienation have been or shall be removed, even if such leases contain provisions authorizing supervision by this department, shall, after such removal of restrictions against alienation, be operated entirely free from such supervision, and the authority and power delegated to the Secretary of the Interior in said leases shall cease, and all payments required to be made to the superintendent for the Five Civilized Tribes shall thereafter be made to lessor or the then owner of said land, and changes in regulations thereafter made by the Secretary of Interior applicable to oil and gas leases shall not apply to such leased land from which said restrictions are removed, except where a bond is required in said lease it shall be furnished with responsible surety, unless the giving of said bond is waived by the lessor or the owner of the land' \* \*, \* that subsequent to the date of the letter of notification mailed by Dana H. Kelsey, superintendent and predecessor in office of Victor M. Locke, Jr., and superintendent for the Five Civilized Tribes, \* \* \* all royalties accruing under the lease from the date of such letters until the date of the death of Robert Pittman, Jr., were paid direct to the guardian of Robert Pittman, Jr., without the intervention and supervision in any form of the superintendent for the Five Civilized Tribes, or any of his employees, servants, or agents; \* \* \* that Lucinda Pittman has been duly adjudged an incompetent, and that Joe McMurry and Albert H. Davidson are her duly qualified and acting guardians."

In addition it was shown that:

"On March 8, 1920, Robert Pittman, the father of decedent, Robert Pittman, Jr., by proper and valid quitclaim deed conveyed to Lucinda Pittman his former wife and the mother of said decedent all of his interest in and to said land covered by said oil and gas lease. On March 7, 1922, the Texas Company offered to pay the sum of $60,000 for the execution of an oil and gas lease covering the land involved herein, the former lease having expired. The guardians, with the approval of the county court, accepted said offer and executed such oil and gas lease to said company. By reason of a temporary restraining order issued by this court at the instance of the defendant, Victor M. Locke, Jr., superintendent for the Five Civilized Tribes, said sum of $60,000 was deposited with him to abide the determination of this action."

The real and only question involved on both appeals is whether the royalties and lease money due Lucinda, the mother of the deceased, are subject to the supervision of the Department of the Interior; she being a full-blood Creek citizen. The acts of Congress applicable to this issue are: Act March 1, 1901, c. 676, 31 Stat. 864; Act May 27, 1902, c. 888, 32 Stat. 258; and Act May 27, 1908, c. 199, 35 Stat. 312.

Section 7 of the act of 1901 contains, among others, the following provision:

"The homestead of each citizen shall remain after the death of the allottee, for the use and support of children born to him after the ratification of this agreement, but if he have no such issue, then he may dispose

of his homestead by will, free from limitation herein imposed, and if this be not done, the land shall descend to 'his heirs according to the laws of descent and distribution of the Creek Nation, free from such limitation."

Section 1 of the act of 1902, among other provisions .not applicable to the issues in this cause, amends that part of section 7 of the act of 1901 hereinbefore quoted by providing that this provision is repealed and—

"The descent and distribution of lands and moneys provided for in said act shall be in accordance with the provisions of chapter 49 of Mansfield's Digest of the Statutes of Arkansas in force in Indian Territory."

By the Enabling Act of Oklahoma of June 16, 1906 (34 Stat. 267, §§ 13 and 21), the laws of Oklahoma were substituted for the laws of Arkansas then in ·force in the Indian Territory, and upon the admission of the state on November 16, 1907, made "the laws of the territory of Oklahoma, relating to descent and distribution, the laws of the state." Jefferson v. Fink, 247 U. S. 288, 293, 38 Sup. Ct. 516, 62 L. Ed. 1117; Harris v. Bell, 250 Fed. 209, 162 C. C. A. 345, affirmed 254 U. S. 103, 41 Sup. Ct. 49, 65 L. Ed. 159.

The Act of May 27, 1908, contains the following provisions applicable to the issues herein:

Section 1: "All lands, except homesteads [the land involved was not a homestead] of said allottees enrolled as mixed-blood Indians having half or more than half and less than three-quarters Indian blood shall be free from all restrictions."

Section 2: "That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee if an adult, or by guardian or curator under order of the proper probate court if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal: Provided, that leases of restricted lands for oil, gas or other mining purposes, leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise: And provided further, that the jurisdiction of the probate courts of the state of Oklahoma over lands of minors and incompetents shall be subject to the foregoing provisions, and the term minor or minors, as used in this act, shall include all males under the age of twenty-one years and all females under the age of eighteen years."

Section 6: "That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma. The Secretary of the Interior is hereby empowered, under rules and regulations to be prescribed by him to appoint such local ·representatives within the state of Oklahoma who shall be citizens of that state or now domiciled therein as he may deem necessary to inquire into and investigate the conduct of guardians or curators having in charge the estates of such minors: * * * Provided, that no restricted lands of living minors shall be sold or encumbered, except by leases authorized by law, by order of the court or otherwise."

Section 9: "That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee. * * * "

The laws of Oklahoma in force at the time of the death of Robert Pittman, Jr. (subdivision 3 of section 8418, Rev.'Laws of Oklahoma 1910, provide:

"If the deceased, being a minor, leave no issue, the estate must go to the parents equally, if living together; if not living together, to the parent having had the care of said deceased minor."

Counsel for the guardians admitted in his argument that, although the deceased minor lived with his father, who had separated from his wife, Lucinda, he was not supported by him, but by his guardian out of the income of his allotment, and that for this reason the father, as heir of the deceased son, was only entitled to one half of the estate and his mother, Lucinda, to the other half. The real and only issue is whether these lands were, at the time the leases were made, restricted lands.

That the one-half interest, inherited by the father, who is a white man, could by no possibility be restricted land, is beyond question, and is in fact admitted by learned counsel for the government; but it is claimed that when he conveyed it to his wife, who is a full-blood Creek Indian, it became restricted, as did the half she inherited, and therefore no valid—

"lease for oil, gas or other mining purposes for more than one year and leases of restricted lands for a period of more than five years, may be made, without the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise."

The court below sustained the contention of counsel for the superintendent for the Five Civilized Tribes, that the half inherited by the mother was restricted land, but denied that the half she acquired by deed from her husband was restricted land. Until 1912 the leases made by Robert, Jr.'s., guardian were submitted to and approved by the Secretary of the Interior. On August 2, 1912, the then superintendent of the Five Civilized Tribes wrote to the guardian of Robert Pittman, Jr., the minor, that:

"He being enrolled as a half-blood citizen, the restrictions upon the land covered by this lease [referring to the leases to the defendant oil companies] having been removed by act of Congress effective July 27, 1908, and the royalties and rentals having been fully paid on the lease to the date of removal of restrictions, you are advised that, under departmental authority, supervision is hereby relinquished over this lease and the account has been closed upon the book of this office. If no transfer or sale of the land covered by this lease has been made, you should look direct to the lessee for settlement of any royalties or rentals which may hereafter accrue.".

On the same day he advised the lessees, and the sureties on their bonds, to the same effect, as set forth in the agreed statement of facts. This construction of the act of 1908 was continued by the Department of the Interior until 1921, shortly before the institution of this action, when the superintendent for the first time claimed the right to exercise dominion over the royalties and rentals of Robert, Jr's., land, who had died on October 8, 1919.

[1] In our opinion the former construction by the Department of the Interior was right, and undoubtedly so under the act of 1908, as

the language of that act is clear and free from ambiguity that, the allotment not being a homestead, passed on the death of the allottee to his heirs free from restrictions. It was so construed by the Supreme Court of Oklahoma in Parks v. Love, 51 Okl. 197, 151 Pac. 885; Jefferson v. Winkler, 26 Okl. 653, 110 Pac. 755; Tirey v. Darneal, 37 Okl. 606, 133 Pac. 614; Allison v. Crummey, 64 Okl. 20, 166 Pac. 691. No doubt many leases and conveyances have been made in reliance on these rulings, and it may well be said it has become a rule of property, which will not be set aside, except for the most cogent reasons, showing that the construction of the act was clearly wrong.

In Reynolds v. Fewell, 236 U. S. 58, 66, 35 Sup. Ct. 230, 233 (59 L. Ed. 465), the court, referring to previous decisions by the Supreme Court of Oklahoma in construing another act of Congress relating to Creek Indians said:

"This decision as to the right of intermarried noncitizens to inherit has been repeatedly followed, and has become a rule of property, which, recognizing the importance of the security of titles, we should not disturb unless it is clearly wrong."

As to the effect of the construction of an act of Congress by the head of the department charged with its execution, the courts have uniformly held that it will not be overturned, except where it is clear that the construction was wrong. United States v. Philbrick, 120 U. S. 52, 59, 7 Sup. Ct. 413, 30 L. Ed. 559; United States v. Johnston, 124 U. S. 236, 8 Sup. Ct. 446, 31 L. Ed. 389; Baker v. Swigart, 199 Fed. 865, 873, 118 C. C. A. 313; United States v. Newport News Shipbuilding Co., 178 Fed. 194, 201, 101 C. C. A. 514. In Harris v. Bell, 254 U. S. 103, 109, 41 Sup. Ct. 49, 51 (65 L. Ed. 159), it was said:

"This administrative view is, of course, entitled to respect, and those who have relied thereon ought not lightly to be put in peril."

No doubt many leases and conveyances have been made in the state of Oklahoma in reliance on the decisions of the Supreme Court of that state, and the ruling of the Department of the Interior hereinbefore referred to, and, even were it doubtful, they should not be lightly disregarded by a change of view, after having been acted on for nine years.

There are no restrictions on this land, certainly none since the death of Robert, Jr.; they having been removed by the Act of May 27, 1908. Counsel for the government overlook the distinction between restricted lands of Indians and incompetent Indians. This distinction is now well settled. Mullen v. United States, 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834; McCurdy v. United States, 246 U. S. 263, 272, 38 Sup. Ct. 289, 62 L. Ed. 706; La Motte v. United States, 254 U. S. 570, 577, 41 Sup. Ct. 204, 65 L. Ed. 410. In Bowling v. United States, 233 U. S. 528, 534, 34 Sup. Ct. 659, 660 (58 L. Ed. 1080), the court limited the right of the United States to maintain an action on behalf of an Indian "where restrictions upon alienation have been transgressed." In United States v. Moore, 284 Fed. 86, 90, this court followed that case, saying:

"Now is the citizenship of the allottee material? The restriction [referring to restriction of land] was not made to depend upon her civil status,

but was impersonal and was laid upon the land, which the government had the duty to preserve against alienation."

Neither of these decisions sustains the government's contention.

[2] The land involved herein had beyond doubt ceased to be re-stricted on the death of the allottee, if it ever was restricted. Lucinda, the mother of the allottee, being a full-blood Indian, was incompetent, and therefore properly under the guardianship of the county court, the court exercising, under the laws of Oklahoma, probate jurisdiction, as required by the act of 1908, and a lease of the land she inherited could be made only by the guardian appointed by that court, and when approved by it. There is no provision in the act of 1908 requiring a lease of unrestricted land by an incompetent full-blood Creek Indian to be approved by the Secretary of the Interior; on the contrary, sec-tion 9 of the act expressly provides for approval of a conveyance of any interest of any full-blood Indian heir "by the court having juris-diction of the settlement of the estate of said deceased allottee."

The decree in favor of the guardians is affirmed, and that in favor of the superintendent of the Five Civilized Tribes is reversed, and the cause remanded, with directions to enter a decree granting the injunc-tion as prayed by the guardians.