## HOLMES v. UNITED STATES.
### No. 484.

Circuit Court of Appeals, Tenth Circuit.

Nov. 27, 1931.

Alger Melton, of Chickasha, Okl. (Adrian Melton, of Chickasha, Okl., on the brief), for appellant.

W. F. Rampendahl, U. S. Atty., of Muskogee, Okl. (Philas S. Jones, Asst. U. S. Atty., of Muskogee, Okl., on the brief), for the United States.

Before COTTERAL and PHILLIPS, Circuit Judges, and JOHNSON, District Judge.

PHILLIPS, Circuit Judge.

This is a suit brought by the United States against A. A. Holmes to cancel a warranty deed.

The facts, as shown by the agreed statement of facts filed in the cause, are as follows: Frances Battiest was a full-blood Choctaw Indian enrolled opposite 5413. A tract of land containing 100 acres situated in Grady county, Oklahoma, was allotted to her as a homestead. She died intestate in Pushmataha county, Oklahoma, April 19, 1911, leaving among other heirs a daughter, Evolyn May Battiest now Loman, born subsequently to March 4, 1906, and not enrolled.

Abner Battiest was a full-blood Choctaw Indian enrolled opposite NB-1090. A tract of land situated in Grady county containing 99.78 acres was allotted to him as a homestead. He died intestate September 26, 1927, leaving among other heirs three children, Sidorus Dixon Battiest, Bessie Rea Battiest, and Abner Battiest, Jr., all born subsequently to March 4, 1906, and not enrolled.

On May 8, 1929, Milton Battiest, Lena Simpson now Battiest, widow of Abner Battiest, Eveline Battiest now Loman, and Alfred Loman, her husband, executed and delivered to Holmes for a recited consideration of $725 their warranty deed purporting to convey to Holmes the tracts of land included in such homestead allotments. Such deed recited that the 100-acre tract was the homestead allotment of Frances Battiest, a full-blood Choctaw Indian, that "title herein conveyed is subject to the provisions of the Act of Congress approved May 27th, 1908, relating to the use of said lands for the use and benefit of Eveline Battiest born since March 4th, 1906," that the 99.78-acre tract was the homestead allotment of Abner Battiest, a full-blood Choctaw Indian, and that the "title herein conveyed is subject to the provisions of the Act of Congress approved May 27th, 1908, relating to the use of said lands for the benefit of Sadoras Battiest. Bessie Rea Battiest, and Abner Battiest, Jr., minors born since March 4th, 1906." The county court of Pushmataha county, the court having jurisdiction over the estates of the deceased allottees, approved such conveyance by order entered on May 8, 1929, and by endorsement upon the deed.

The restrictions against alienation of such homestead allotments have never been removed by the Secretary of the Interior in the manner provided in section 1 of the act of May 27, 1908 (35 St. 312), and such conveyance to Holmes has never been approved by such Secretary.

Holmes has not interfered with the use and possession of such lands by the issue of such allottees born after March 4, 1906.

The trial court was of the opinion that the deed was void under the restrictions imposed by the act of May 27, 1908 (35 St. 312), and entered a decree canceling the deed. Holmes has appealed.

Section 9 of such act reads as follows:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee: Provided further, That if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March fourth, nineteen hundred and six, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the manner provided in section one hereof, for the use and support of such issue, during their life or lives, until April twenty-sixth, nineteen hundred and thirty-one; but if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will free from all restrictions; if this be not done, or in the event the issue hereinbefore provided for die before April twenty-sixth, nineteen hundred and thirty-one, the land shall then descend to the heirs, according to the laws of descent and distribution of the State of Oklahoma, free from all restrictions: Provided further, That the provisions of section twenty-three of the act of April twenty-sixth, nineteen hundred and six, as amended by this act, are hereby made applicable to all wills executed under this section."

Under the provisions of such section 9 restrictions are removed upon the death of the allottee, except in cases falling within the two provisos thereto.

The first proviso continues qualified restrictions as to full-blood adult Indian heirs by requiring a conveyance of the inherited interest of such an heir to be approved by the court having jurisdiction of the allottee's estate, acting as a federal agency. Parker v. Richard, 250 U. S. 235, 238, 239, 39 S. Ct. 442, 63 L. Ed. 954; Harris v. Bell, 254 U. S. 103, 41 S. Ct. 49, 65 L. Ed. 159; United States v. Gypsy Oil Co. (C. C. A. 8) 10 F.(2d) 487, 489-490.

Counsel for Holmes contend that the second proviso limits, in case of. less than full-blood heirs, the removal of restrictions, and in case of full-blood heirs, the qualification of such restrictions, resulting from the death of the allottee, only as to the special estate in the homestead which passes to surviving issue born after March 4, 1906; that the remainder passes to less than full-blood heirs free from restrictions and to full-blood adult heirs subject only to such qualified restrictions; that such deed only undertook to convey such remainder interest and fully recognized the rights of such issue born since March 4, 1906, and that it was duly approved by the court having jurisdiction of the estates of the deceased allottees.

On the contrary counsel for the government contend that such second proviso, in the event of issue born subsequently to March 4, 1906, continues the restrictions against the entire fee in the homestead, unless they are removed by the Secretary of the Interior in the manner provided in section 1 of the act, during the life of such issue but not beyond April 26, 1931.

It may be admitted that the primary purpose of such second proviso was to provide for the issue of allottees born after March 4, 1906, and therefore not enrolled.

Congress had plenary power in the premises. Tiger v. Western Inv. Co., 221 U. S. 286, 31 S. Ct. 578, 55 L. Ed. 738; Sperry Oil & Gas Co. v. Chisholm, 264 U. S. 488, 493, 494, 44 S. Ct. 372, 68 L. Ed. 803; 31 C. J. p. 513, § 79. It could have removed or qualified the restrictions upon the death of the allottee except as to the special estate in the homestead for life or for years which it reserved for issue born after March 4, 1906. On the other hand, it could have continued the restrictions as to both such special estate and the estate in remainder during the life of such issue "until April twenty-sixth, nineteen hundred and thirty-one." There are reasons why Congress might have chosen the latter course. The enjoyment of the estate of the heirs generally being postponed during the life of issue born after March 4, 1906, but not beyond April 26, 1931, such heirs would probably be disposed to sell their interests without regard to their value, and a purchaser of the remainder estate might be inclined to encroach upon the rights of such issue and interfere with the enjoyment of the special estate reserved for them.

Of course the fundamental inquiry is, What did Congress intend to provide? Darby-Lynde Co. v. Alexander (C. C. A. 10) 51 F.(2d) 56, 58.

During the life of the allottee the homestead remained restricted unless such restrictions were removed by the Secretary of the Interior. Section 1, Act of May 27, 1908 (35 St. p. 312). Upon the death of the allottee leaving full-blood heirs and no issue born after March 4, 1906, a qualified restriction continued and the conveyance by such an heir of his inherited interest could only be made, in case of an adult heir, with the approval of the court having jurisdiction of the estate of the allottee, and, in case of a minor heir, with the approval of the court having jurisdiction of the guardianship of such minor. Parker v. Richard, supra; Harris v. Bell, supra; United States v. Gypsy Oil Co., supra.

In case the allottee left issue born after March 4, 1906, Congress said by the second proviso that "the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior * * * for the use and support of such issue, during their life or lives, until April twenty-sixth, nineteen hundred and thirty-one." (Italics ours.) The proviso has two purposes: The creation of a special estate for surviving issue born subsequently to March 4, 1906, and the continuation of restrictions, in the event of such issue, after the death of the allottee. Congress did not say that the special estate created for such issue should be inalienable, but that the homestead should remain inalienable. We think the language of the proviso above quoted shows Congress intended to provide, in the event the allottee should die leaving such issue, that the entire estate, both the estate for life or for years and in remainder, should remain inalienable during the life or lives of such issue, but not beyond April 26, 1931; and that during the life or lives of such issue, but not beyond April 26, 1931, such issue should have the use of the homestead for their support and maintenance.

We are further of the opinion that this construction is borne out by the following language of the proviso:

"In the event the issue hereinbefore provided for die before April twenty-sixth, nineteen hundred and thirty-one, the land shall then descend to the heirs, according to the laws of descent and distribution of

the State of Oklahoma, free from all restrictions." (Italics ours.)

Under the general provisions of section 1 of the act all restrictions terminated April 26, 1931, and therefore Congress was providing for the contingency of the termination of the special estate by the death of such issue before that date. It will be noted that Congress did not provide that upon the death of the allottee an estate in remainder should descend to the heirs free from restrictions, but that upon the termination of such special estate prior to April 26, 1931, the land should then descend to the heirs free from all restrictions.

From a technical standpoint, upon the death of the allottee leaving such issue surviving, the special estate for life or years passed to such issue, and the remainder to the heirs at law generally. This is true because the issue took only an estate for life or years, and the remainder had to vest in someone upon the death of the allottee.

Therefore when Congress said, on the termination of the special estate by the death of such issue prior to April 26, 1931, "the land shall then descend to the heirs, * * * free from all restrictions," it did not intend to postpone the descent of the estate to the heirs subject to the special estate for life or years, but to provide that upon the termination of such special estate prior to April 26, 1931, the land which theretofore had been restricted against alienation should then be held by the heirs free from restrictions. The purpose was to remove the restrictions, not to determine or fix the time of the descent.

Furthermore, the language "the *land* shall then descend to the heirs, * * * free from all restrictions" (italics ours) also indicates that the restrictions were continued not only against the alienation of the special estate but against alienation of the land, the entire fee, during the continuation of such special estate.

The primary meaning of the word "land" at common law is "any ground, soil or earth whatsoever; as arable, meadows, pastures, woods, waters, marshes, furzes and heath." 2 Blackstone, Com. 18. In a more limited sense the term connotes the quantity and character of the interest or estate which the tenant may own in land. Johnson v. Richardson, 33 Miss. 462, 464; Kemp v. Goodnight, 168 Ind. 174, 80 N. E. 160, 161; Bouvier's Law Dictionary, Rawles (3d Revision) vol. 2, p. 1827. We think it was here used in the sense of the entire fee.

In the first part of the proviso Congress said that the homestead should remain restricted, and in the last part that upon the termination of the special estate prior to April 26, 1931, the land should become unrestricted, thus we think clearly indicating that during the continuation of such special estate not it alone but the entire fee should be restricted against alienation unless the Secretary of the Interior should see fit in the meantime to remove such restrictions.

This construction comports with the general language of the Supreme Court in Parker v. Riley, 250 U. S. 66, 39 S. Ct. 405, 406, 63 L. Ed. 847, wherein Mr. Justice Van Devanter said:

"The allottee, * * * was an enrolled full-blood Creek Indian and died several months after the act of May 27, 1908. The restrictions on the alienation of her homestead had not been removed, and among her heirs was a child * * * born after March 4, 1906. In these circumstances a reading of section 9 makes it very plain that the restrictions did not terminate with the allottee's death, but remained in force. * * * *"

The restrictions which did not terminate and remained in force were general restrictions imposed by section 1 of the act. They forbade the alienation of the entire estate and not the special estate created for such issue.

The Supreme Court of Oklahoma has so construed section 9 in the following cases: Grisso v. Milsey, 104 Okl. 178, 230 P. 883; Kimbro v. Harper, 113 Okl. 46, 238 P. 840; Gage v. Harlin, 122 Okl. 169, 250 P. 82; Take v. Miller, 139 Okl. 115, 281 P. 576. The Supreme Court of the United States denied certiorari in the last two cases. See Harlin v. Gage, 275 U. S. 484, 48 S. Ct. 18, 72 L. Ed. 386; and Miller v. Take, 281 U. S. 729, 50 S. Ct. 245, 74 L. Ed. 1145. See, also, United States v. Martin (D. C. Okl.) 45 F.(2d) 836.

Counsel for Holmes cite and rely upon the decision of the Eighth Circuit in Willmott v. United States, 27 F.(2d) 277, 280. It is true there is general language in the opinion in that case which supports their contentions, but the conclusion of the court is primarily based on the fact that the Secretary of the Interior had removed the restrictions, and the question here presented was not fully discussed and considered.

We conclude that such conveyance was made in violation of the restrictions imposed

by the act of May 27, 1908, against the alienation of such homestead allotments; that such restrictions had not been removed and had not terminated when such deed was made, and that it is therefore void.

The decree is affirmed.