442

District Court, E. D. Oklahoma.

May 24, 1940.

H. K. Hudson, of Bartlesville, Okl., Morse Garrett, of Tulsa, Okl., and W. F. Rampendahl, of Muskogee, Okl., for defendants.

Cleon A. Summers, U. S. Atty., and Charles N. Champion, Asst. U. S. Atty., both of Muskogee, Okl., for the United States.

RICE, District Judge.

The lands involved herein were the homestead allotments of Lemma Johnson, a full-blood member of the Mississippi Choctaw Tribe of Indians. The allottee died on the 22nd day of December, 1933, a resident of Carter County, Oklahoma, leaving surviving as her sole and only heirs Oscar Sampson and Freeman Ned, each full-blood Mississippi Choctaw Indians. These heirs conveyed the lands herein to John F. Easley by warranty deed, which deed was approved by the County Court of Carter County, Oklahoma. During the lifetime of the allottee, Lemma Johnson, the lands involved herein were designated by her as tax-exempt under the provisions of Section 4 of the Act of Congress approved May 10, 1928, 45 Statutes 495, 496. The heir, Oscar Sampson, under the provisions of the Act of 1928, supra, selected one hundred sixty acres of his own land as tax-exempt. The Secretary of the Interior did not at any time make an order removing restrictions upon the sale of these lands, and the sale thereof by the heirs of the allottee was not approved by the Secretary of the Interior. The original grantee, John F. Easley, made subsequent conveyances, and the record title to said land at the time of the bringing of this suit was in the other defendants.

The government brings this suit to cancel all conveyances and to quiet title in said lands in the name of the heirs of the allottee, the theory of the government being that the lands being designated as tax-exempt and passing by descent subsequent to the passage of the Act of 1933, removal of restrictions could be had only by the act of the Secretary of the Interior, and that the approval of the deed executed by the full-blood heirs by the County Court was unauthorized.

The first section of the Act of Congress approved January 27, 1933, 47 Stat. 777, through the first proviso is as follows: "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That all funds and other securities now held by or which may hereafter come under the supervision of the Secretary of the Interior, belonging to and only so long as belonging to Indians of the Five Civilized Tribes in Oklahoma of one-half or more

Indian blood, enrolled or unenrolled, are hereby declared to be restricted and shall remain subject to the jurisdiction of said Secretary until April 26, 1956, subject to expenditure in the meantime for the use and benefit of the individual Indians to whom such funds and securities belong, under such rules and regulations as said Secretary may prescribe: Provided, That where the entire interest in any tract of restricted and tax-exempt land belonging to members of the Five Civilized Tribes is acquired by inheritance, devise, gift, or purchase, with restricted funds, by or for restricted Indians, such lands shall remain restricted and tax-exempt during the life of and as long as held by such restricted Indians, but not longer than April 26, 1956, unless the restrictions are removed in the meantime in the manner provided by law".

Under the Act of May 27, 1908, 35 Statutes 312, the death of an allottee operated to remove all restrictions upon alienation, except that the deed of a full-blood Indian heir to inherited land, in order to be valid, must be approved by the County Court having jurisdiction of the settlement of the estate of the deceased allottee. That provision of the law is still in full force and effect, but the contention of the government is that it has no application to inherited tax-exempt lands, by reason of the proviso in the first section of the Act of 1933.

■ The requirement under the Act of 1908 that deeds by full-blood Indian heirs must be approved by the County Court having jurisdiction of the settlement of the estate of the deceased allottee was a qualified restriction against alienation and the County Courts of Oklahoma were recognized as federal agencies for the removal of such qualified restrictions. Parker v. Richard, 250 U.S. 235, 39 S.Ct. 442, 63 L.Ed. 954; Harris v. Bell, 254 U.S. 103, 41 S.Ct. 49, 65 L.Ed. 159; Commissioner of Internal Revenue v. Owens, 10 Cir., 78 F.2d 768, 769; Holmes v. United States, 10 Cir., 53 F.2d 960; United States v. Mid-Continent Petroleum Co., 10 Cir., 67 F.2d 37.

■ The purpose of the Act of 1933 was to deal with Indian heirs or devisees of less than full blood and to place restrictions upon the alienation of the particular class of lands dealt with in the hands of Indian heirs of one-half or more degree of blood. Glenn v. Lewis, 10 Cir., 105 F.2d 398. The question of whether or not the Act of 1933 affected prior Acts providing methods

for removal of restrictions of full-blood Indian heirs is dealt with in the case of United States of America v. C. E. Bond and Nellie Bond, 10 Cir., 108 F.2d 504, 507. The particular question in that case was whether or not these tax-exempt lands in the hands of full-blood Indian heirs were subject to the laws of the State of Oklahoma permitting partition of lands by the County Courts and District Courts of the State of Oklahoma, consent to which was given by Congress in the Act of June 14, 1918, 40 Statutes 606, 25 U.S.C.A. §§ 355, 375. The Circuit Court of Appeals, in holding that the Act of 1918 was not affected by the Act of 1933, uses this language:

"Thus the statute not only fails to indicate a purpose to impinge upon the jurisdiction of the county court to order and direct partition and sale of restricted land in the course of administration and settlement of the estate of an allottee, with conveyance free of restrictions; but it points to Congressional recognition of the existing jurisdiction to remove restrictions in that manner and a desire that it be continued without interference. * * *

"At least two separate and distinct methods existed at that time for the removal of restrictions against alienation. One was by the Secretary of the Interior, and the other was by partition and sale in the county court in the course of the administration and settlement of the estate of a deceased full-blood Indian. The concluding language in the proviso is plainly broad enough to include both. Thus Congress again painstakingly indicated a desire not to impinge upon the power to remove restrictions in any manner then authorized by law but to recognize any such method and to signify a desire that it be unaffected".

■ The language of the two cases above, recently decided by the Circuit Court of Appeals, is sufficient for the conclusion that the County Courts of Oklahoma still have the right to approve the deeds of full-blood Indian heirs of lands coming within the provisions of the Act of 1933; but, if further argument be necessary, we think that Section 8 of the Act of 1933 specifically recognized the County Courts of the State of Oklahoma as federal agencies for the approval of conveyances of inherited lands. This section is as follows: "That it shall be the duty of the attorneys provided for under the Act of May 27,

1908 (35 Stat.L. 312), to appear and represent any restricted member of the Five Civilized Tribes before the county courts of any county in the State of Oklahoma, or before any appellate court thereof, in any matter in which said restricted Indians may have an interest, and no conveyance of any interest in land of any full-blood Indian heir shall be valid unless approved in open court after notice in accordance. with the rules of procedure in probate matters adopted by the Supreme Court of Oklahoma in June of 1914, and said attorneys shall have the right to appeal from the decision of any county court approving the sale of any interest in land, to the district court of the district to which the county is a part".

The language of Section 8 is all-inclusive, and, had it been the intention of Congress to except from the operation of Section 8 the lands mentioned in the first proviso of Section 1 of said Act, it seems clear that Congress would have said so in definite language.

Attorneys for the plaintiff, the United States government, will prepare a proper form of judgment in accordance with the above opinion and present the same to the opposing parties. Said cause is set for the entry of judgment at Muskogee, May 24, 1940.