### WARD v. UNITED STATES et al.

#### No. 2707.

Circuit Court of Appeals, Tenth Circuit.

Nov. 3, 1943.

W. F. Semple, of Tulsa (Tom Finney, of Tulsa, and E. E. Cochran, of Idabel, on the brief), for appellant.

Marvin J. Sonosky, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Cleon A. Summers, U. S. Atty., and Charles N. Champion, Asst. U. S. Atty., both of Muskogee, Okl., and Vernon L. Wilkinson and S. Billingsley Hill, Attys., Dept. of Justice, both of Washington, D. C., on the brief), for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

Ward brought this action against the unknown heirs of Joe Ben, a deceased full-blood Choctaw Indian, the heirs of Johnny Cooper, a deceased full-blood Choctaw Indian, and the heirs of Louisa Ben, a full-blood Choctaw Indian, to quiet the title to a tract of land situated in McCurtain County, Oklahoma. The land was originally allotted to Joe Ben. Joe Ben died December 25, 1912, leaving as his sole surviving heir his widow, Louisa Ben. Louisa Ben, by deed dated March 27, 1918, conveyed the lands to J. C. McDougald. The deed was duly approved by the county court of McCurtain County, Oklahoma, the court having jurisdiction of the settlement of the estate of Joe Ben. The land passed by mesne conveyances to Bernie Herstein.

With restricted funds derived from sale of the restricted allotment of Johnny Cooper, the Secretary of the Interior purchased such land. The land was conveyed

by Herstein to Johnny Cooper by a Carney-Lacher form of deed containing the following restrictive clause:

" * * * that no lease, deed, mortgage, power of attorney, contract to sell, or other instrument affecting the land therein described, or the title thereto, executed during the lifetime of the said grantee at any time prior to April 26, 1931, shall be of any force and effect or capable of confirmation or ratification unless made with the consent of and approved by the Secretary of the Interior; * * *"

On April 10, 1927, Johnny Cooper died intestate seized and possessed of the purchased land, leaving as his sole heir-at-law his widow, Nelis Cooper, a full-blood Choctaw Indian, enrolled as Nelis Johnson opposite Roll No. 2190.

On May 8, 1928, Nelis Cooper, by warranty deed, undertook to convey the purchased land to Frank Yawitz. That deed was not approved by the county court of McCurtain County nor by the Secretary of the Interior. Nelis Cooper died intestate June 2, 1941, leaving surviving, as her next of kin and heirs-at-law, her husband, Albert Washington, an enrolled full-blood Choctaw Indian, and a son, Peter Dyer, an unenrolled full-blood Choctaw Indian. The interest, if any, acquired by Yawitz, passed by mesne conveyances to Ward.

Notice of the pendency of the suit was served on the Superintendent of the Five Civilized Tribes pursuant to the Act of Congress of April 12, 1926, 44 Stat. 239, and thereafter the United States filed its petition in intervention seeking a decree quieting the title in the heirs of Nelis Cooper. From a decree as prayed for in the petition in intervention of the United States, Ward has appealed.

The primary question presented is whether the land, on the death of Johnny Cooper, vested in Nelis Cooper free and clear of all restrictions.

Section 1 of the Act of May 27, 1908, 35 Stat. 312, provided that lands theretofore or thereafter allotted to enrolled full-bloods should not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April 26, 1931, "except that the Secretary of the Interior" might "remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he" might "prescribe."

Pursuant to such statutory authority, the Secretary of the Interior prescribed a rule reading, in part, as follows:

"Where lands are purchased for the use and benefit of any citizen of the Five Civilized Tribes, of the restricted class, payment for which is made from proceeds arising from the sale of restricted allotted lands * * * the superintendent * * * shall cause a conveyance of such lands to be made on a form of conveyance containing an habendum clause against alienation or encumbrance until April 26, 1931."

Section 9 of the Act of May 27, 1908, as amended by the Act of April 12, 1926, 44 Stat. 239, reads, in part, as follows:

"The death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, That hereafter no conveyance by any full-blood Indian of the Five Civilized Tribes of any interest in lands restricted by section 1 of this Act acquired by inheritance or devise from an allottee of such lands shall be valid unless approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee or testator: * * *"

Section 9 contained a second proviso which continued the restrictions imposed by § 1 of the Act with respect to homesteads of deceased allottees, where such allottees left issue surviving, born after March 4, 1906, during the life or lives of such issue, but not longer than April 26, 1931.[1]

The first proviso of § 9, supra, continued qualified restrictions as to full-blood Indian heirs and devisees.[2]

Section 1 of the Act of May 10, 1928, 45 Stat. 495, extended the restrictions against alienation of the lands allotted to members of the Five Civilized Tribes of one-half or more Indian blood for an additional period of 25 years from April 26, 1931. Section 2 of such Act extended the provisions of § 9 of the Act of May 27, 1908, as amended by the Act of April 12, 1926, except the

---

[1] Holmes v. United States, 10 Cir., 53 F.2d 960, 963.

[2] Holmes v. United States, 10 Cir., 53 F. 2d 960, 961; Parker v. Richards, 250 U. S. 235, 238, 239, 39 S.Ct. 442, 63 L.Ed. 954; Harris v. Bell, 254 U.S. 103, 41 S. Ct. 49, 65 L.Ed. 159; United States v. Gypsy Oil Co., 8 Cir., 10 F.2d 487, 489, 490.

second proviso thereof, for a period of 25 years from April 26, 1931. It repealed the second proviso effective April 26, 1931.

■ The funds derived from the sale of the restricted allotment of Johnny Cooper while in the hands of the Secretary continued to be restricted and the land purchased with such funds continued to be restricted during the lifetime of Johnny Cooper.[3] In Sunderland v. United States, 266 U.S. 226, 235, 45 S.Ct. 64, 65, 69 L.Ed. 259, the court said:

"Since the allotted lands could not be sold or encumbered without his consent, and since the proceeds of any sale thereof were subject to his control and could only be disposed of with his approval and under such rules as he might prescribe for the benefit of the respective Indians, the extension of such control to the property in which the proceeds were directly invested would seem to be within the statute fairly construed."

■ In substance, there was a mere conversion of trust property. The restricted allotment was converted into funds and the funds were converted into land. Such land was charged with the same trust as the original allotment,[4] under the well-settled principle of the law of trusts that, whenever property in its original state and form has once been impressed with a trust, no change of that state and form can divest it of its trust character, so long as it remains capable of clear identification.[5]

■ The rule promulgated by the Secretary of the Interior, being authorized by the Act, had the force and effect of law.[6] It supplemented § 1 of the Act and in effect became a part thereof. When regard is had for the fact that restrictions were imposed on the purchased land, by virtue of the rule promulgated under § 1 of the Act and the principle of the law of trusts stated above, we think it may be fairly said that the purchased land was "restricted by section 1 of" the Act, within the meaning of that phrase in § 9. It was equally important that the interest of the full-blood Indian heir, acquired by inheritance from the allottee, be protected, whether such interest was in the original allotment, or in restricted lands into which the original allotment had been converted. And we cannot think that Congress intended otherwise. We accordingly conclude that the purchased land was restricted by § 1 of the Act.

■ For the same reasons, we are of the opinion that Johnny Cooper was "an allottee of such lands" within the meaning of that phrase in § 9. While the purchased land was not his original allotment, it was land into which the original allotment had been converted and was held under the same trust.

■■ Moreover, we are of the opinion, for the reasons stated in Grisso v. United States, 10 Cir., 138 F.2d 996, decided November 10, 1943, that the phrase "from an allottee of such lands" was intended to limit only the word "devise" and not "inheritance." Furthermore, if the first provision of § 9 is ambiguous, the doubt should be resolved in favor of the Indians.[7] A construction that the interest acquired through inheritance by Nelis Cooper remained subject to the qualified restrictions of § 9 will further the manifest policy of Congress to protect full-blood Indian heirs of the Five Civilized Tribes against loss of their lands, a policy manifest by the Act of January 27, 1933, 47 Stat. 777, 779, which imposed qualified restrictions generally with respect to interests in land of such full-blood Indian heirs. See Murray v. Ned, 10 Cir., 135 F.2d 407, certiorari denied November 8, 1943, 64 S.Ct. 188.

Finally, reference to the legislative history of the Act of May 10, 1928, confirms

[3] Sunderland v. United States, 266 U.S. 226, 234, 235, 45 S.Ct. 64, 69 L.Ed. 259; Mott v. United States, 283 U.S. 747, 750, 751, 51 S.Ct. 642, 75 L.Ed. 1385; United States v. Goldfeder, 10 Cir., 112 F.2d 615, 616; United States v. Watashe, 10 Cir., 102 F.2d 428, 430; United States v. Brown, 8 Cir., 8 F.2d 564, 568.

[4] United States v. Thurston County, Neb., 8 Cir., 143 F. 287, 292; National Bank of Commerce v. Anderson, 9 Cir., 147 F. 87, 89, 90.

[5] National Bank v. Insurance Co, 104 U. S. 54, 67, 26 L.Ed. 693; Cook v. Tullis, 85 U.S. 332, 341, 342, 18 Wall. 332, 341, 342, 21 L.Ed. 933; Republic Supply Co. v. Richfield Oil Co., 9 Cir., 79 F.2d 375, 377.

[6] Maryland Casualty Co. v. United States, 251 U.S. 342, 346, 40 S.Ct. 155, 64 L.Ed. 297; Detroit & Windsor Ferry Co. v. Woodworth, 6 Cir., 115 F.2d 795, 797.

[7] Drummond v. United States, 10 Cir., 131 F.2d 568, 570; Taylor v. Tayrien, 10 Cir., 51 F.2d 884, 890, certiorari denied 284 U.S. 672, 52 S.Ct. 127, 76 L.Ed. 569; Choate v. Trapp, 224 U.S. 665, 675, 32 S.Ct. 565, 56 L.Ed. 941.

the construction we have adopted. The Committee on Indian Affairs of the United States Senate adopted as a part of its report a letter by the Secretary of the Interior who drafted and sponsored that Act. In his letter submitting the proposed bill to Congress, the Secretary, in part, stated:

"* * * it appearing that in the cases of the full-blood and other restricted Indians of the Five Civilized Tribes there is need of the continued protection of the Government in relation to their restricted Indian property and income therefrom, it is believed that, . . . the restrictions on their *allotted and other restricted lands* should be extended for an additional period of 25 years commencing on April 26, 1931, and legislation for that purpose should be enacted." (Italics ours.) (S.Rep. 982, 70th Cong., 1st Sess., Cong.Doc.Series 8831.)

We accordingly conclude that the Nelis Cooper deed of May 8, 1928, lacking the requisite approval, was void.

The judgment is affirmed.