HART v. BATES.

1. Where a judgment creditor purchases at sheriff's sale the "land assigned as a homestead" to the judgment debtor; supposed at the time to include an entire tract, he or his assignee are not thereby estopped from afterwards bringing an action as owner of a junior judgment to set aside as fraudulent a prior deed covering such part of the tract as has been judicially ascertained not to have been included in the sheriff's sale and deed. No question of election of remedies is here involved.

2. According to the *Duchess of Kingston's* case (2 *Sm. Lead. Cas.* 424), three things are necessary to sustain the plea of *res judicata*: 1, the parties must be the same, or their privies; 2, the subject-matter must be the same; 3, the precise point must have been ruled.

3. An assignee of a judgment is a privy of his assignor only in regard to the judgment, and is not bound by an adjudication in an action between the assignor as purchaser of land covered by the lien of such judgment and a third person.

4. An assignee of a junior judgment is not estopped from attacking a deed of the debtor as fraudulent, because that, subsequent to the assignment, in action between himself (as purchaser, prior to the assignment, of the judgment-debtor's land under a senior judgment) and a grantee of such debtor by deed intermediate the judgments, a part of the land was recovered by the grantee on the ground that it was not included in the sheriff's sale and deed, no question of fraud in the grantee's deed being there made. And the assignee not being estopped, a subsequent purchaser from him is not estopped.

5. A judgment is not conclusive of every question which might have been made in the case, as is sometimes erroneously said, but only of matters that had of necessity to be determined before the judgment could have been given.

6. A judgment is certainly not conclusive of a matter of fraud, when the question of fraud was not raised, and the facts constituting the fraud were not known to the party injuriously affected.

7. A recorded deed from an embarrassed father to his son, expressed to be for valuable consideration, is no notice to parties in interest of fraud in the conveyance.

8. Adverse possession is not complete until full ten years have expired, and the statute of limitations does not begin to run in favor of a fraudulent deed until the discovery of facts constituting the fraud.

Before THOMSON, J., Greenville, March, 1880.

Action by Sarah J. Hart, assignee, against John Bates, Sr., John Bates, Jr., Green L. Walker, Mary A. Walker, Sarah C.

Good, and Valentine G. Wood—the last three being made parties under order of Judge Pressley. The facts and the order of the Circuit judge sufficiently appear in the opinion of this court. The exceptions are long, but they raise only the precise questions considered by this court.

Mr. *T. H. Cooke,* for appellant.

April 5, 1882. The opinion of the court was delivered by Mr. Justice McGowan. This was an action to set aside certain deeds of land as fraudulent and void. A short statement of the facts is necessary to make the judgment intelligible. John Bates, Sr., of Greenville, became embarrassed, and on March 5, 1867, Turner and Barton recovered judgment against him, and in May, 1869, E. A. Kelly and J. W. Coleman and other creditors obtained judgments against him. On October 23, 1867, he made a deed to his son, John Bates, Jr., of his lands, consisting of two tracts, which for convenience we will call No. 1 and No. 2, consisting in the aggregate of 492 acres. The deed expressed the consideration of $385.63.

John Bates, Jr., on Oct. 26, 1869, conveyed back to John Bates, Sr., a part of tract No. 2 (87 acres) in trust for his daughter, Sarah C. Good, the consideration stated being $125, and the remainder of that tract, 199 acres, to the defendant Green L. Walker, *in trust* for his wife, Mary, another daughter of John Bates, Sr., upon the consideration stated of $175. John Bates, Jr., still lived with his father on No. 1 until 1874, when he moved to tract No. 2. John Bates, Sr., and Green L. Walker are now in possession of tract No. 2. On July 16, 1869, while John Bates, Sr., was living on tract No. 1, he had a *homestead* assigned to him by metes and bounds, represented as containing 410 acres, more or less, and believed to embrace all the lands covered by the deed from John Bates, Sr., to John Bates, Jr.

In this way John Bates, Sr., and his family held all his lands until 1876, when Turner and Barton, whose judgment was not only older than the constitution allowing homestead, but also older than the deed to John Bates, Jr., had the "homestead"

assigned to John Bates, Sr., levied on and sold, and one A. A. Hart became the purchaser and received sheriff's titles; which described the land levied and sold as that which had been assigned to John Bates, Sr., as his "homestead." After this sale John Bates, Sr., removed to the parcel of tract No. 2 which had been reconveyed to him as trustee for his daughter, Mrs. Good, and A. A. Hart, the purchaser, under some proceeding *ousted* John Bates, Jr., from tract No. 1. About that time Hart discovered that his deed conveying the land which had been assigned as homestead did not include tract No. 2, and he purchased the judgments of Kelly and Coleman, and had them levied upon tract No. 2. He became the purchaser also of that tract and took sheriff's titles.

In 1877 John Bates, Jr., brought an action against A. A Hart for tract No. 1, from which he had been ousted. Hart stood on his first deed from the sheriff, describing the land purchased by him as that which had been "assigned as homestead," but when that was located it was found not to cover 151 acres of tract No. 1, for which Bates had a verdict and Hart for the remainder. This recovery must have been founded upon the *original deed* from John Bates, Sr., and in this action the question of its *bona fides* was not made. There was no appeal.

There was still a balance upon the judgments unpaid, and in 1879 A. A. Hart assigned them to his wife, Sarah J. Hart, who as assignee of the judgments instituted these proceedings to set aside as fraudulent and void the deed from John Bates, Sr., to his son, the said John Bates, Jr. The plaintiff offered proof that the deed was without consideration and void as to creditors. The defendants offered no evidence, but moved to dismiss the complaint on the ground mainly that the question of the *bona fides* of the deed from father to son had been adjudged in the case of *Bates* v. *A. A. Hart,* and that Sarah J. Hart was a privy of A. A. Hart, the defendant in that case, and could not now assail the deed as fraudulent. The plaintiff replied that as assignee of the judgments she was not a privy of A. A. Hart in respect to *the deed* to John Bates, Jr.; but if she were such privy, the fact that the deed was fraudu-

lent was not known at the time of the trial of the case of *Bates*
v. *A. A. Hart*, but was discovered afterwards, and being sub-
sequently discovered, the question was not made and could not
have been adjudged in that *case.* There was no evidence go-
ing to. show that the plaintiff or her assignor had knowledge
of the alleged fraud at the time of the trial of the former case.
On the contrary, the plaintiff showed that she had no knowl-
edge of the alleged fraud until after said trial, and that she
heard of the same for the first time in the latter part of 1878,
and only shortly before the judgments were assigned to her.
There was evidence showing that the alleged fraud had been
talked about on the streets of Greenville many years before
the plaintiff brought her action, but none showing that the
plaintiff or her assignor had any knowledge of the same until
the latter part of 1878. There was no evidence introduced to
establish the fact that on the trial of the case of *Bates* v. *Hart*
the question of the *mala fides* of the deed to John Bates, Jr.,
was in any way considered.

The presiding judge held as matter of law that while there
was no proof of such issue having been made and determined,
" *he took it for granted it had been done,*" and dismissed the
complaint. The plaintiff appeals to this court. The excep-
tions are long and numerous to the rulings both of law and
fact, but we do not think it necessary to consider them all
*seriatim*, as enough has been stated to present the questions
which, according to our view, must decide the case.

One of the findings of fact, however, should be considered
before we reach the main point. The presiding judge found
as follows: " That the plaintiff's assignors had exhausted their
remedy under the executions, and should not be remitted to
another mode of relief affecting the same property ; that hav-
ing exhausted their measure of relief by sale, their assignee
again presents the executions and asks that the land be sold—
not indeed under the executions, but what is substantially the
same thing, for their payment. This approaches a case of
election of remedies where a choice is presented, and such elec-
tion having been made by the sale of the property, the parties
are bound by it."

According to the facts stated in "the case," this appears to be a misapprehension of both fact and law. The piece of land containing 151 acres of tract No. 1, which John Bates, Jr., recovered from Hart, and which substantially is the subject of this controversy, *was never sold under the executions at all.* The very ground upon which Bates recovered it from Hart was that the sheriff at his first sale sold only "the homestead," and when that was located it appeared that the sheriff's deed did not include this particular parcel, which *had not been sold at all.*

It is a mistake to say that "the creditors have exhausted their remedy under the executions." They could now levy and sell all the interest of John Bates, Jr., in the 151 acres, being outside of the lines of "the homestead." But as the parcel is claimed by John Bates, Jr., under the deed from his father, it was better possibly to make the issue of fraud in the deed, so as to remove that cloud from the title before levy and sale. That A. A. Hart for a time supposed that "the homestead," which he had purchased and which called for 410 acres, covered this parcel, could not alter the fact that it did not. The parcel of land in controversy was never sold under the executions either by the plaintiff or her assignors, and as to that the question is still open. A. A. Hart made a mistake as to *what lands* his deed from the sheriff covered, which was corrected in the first case; but that affords no reason why he should not be allowed to conform his actions to the facts as they were established by the decision of the court. We see nothing to raise a question of election.

The presiding judge held as matter of law "that the action of plaintiff prayed relief by a sale of lands, a portion of which, in a suit between her immediate assignor, A. A. Hart, and John Bates, Jr., had been declared the property of the latter, which judgment had not been reversed; that this suit was between parties who were privies in interest, and the right in question was adjudged." The question is was this ruling error.

As we understand it, the object of this action was not to sell the land but to set aside deeds, so that it could be sold under the executions as the property of John Bates, Sr. At all

events we shall consider that as the scope of the proceeding. The judge did not consider the evidence of fraud in the deed, but, disregarding it entirely, dismissed the complaint; and therefore, in considering the question whether he committed error, we may assume that fraud was or could be proved.

The doctrine of "*res judicata*" is very far-reaching and effective. It is founded on principles of the wisest policy, because the peace and order of society require that a matter once litigated should not again be drawn in question between the same parties or those claiming through them. But whilst it is important to maintain the principle in all its integrity, it is no less important that it should be clearly defined and kept within its proper limits. All agree as to its utility and necessity, but there has been difference of opinion as to its precise limits and its application in particular cases.

As we understand it, the rule established in the *Duchess of Kingston's case* is, "*first*, that the judgment of a court of competent jurisdiction, directly on the point, is as a plea in bar or as evidence conclusive between the same parties upon the same matter directly in question in another court; *secondly*, that the judgment of a court of exclusive jurisdiction directly upon the point is in like manner conclusive upon the same matter between the same parties coming incidentally in question in another court for a different purpose. But neither the judgment of a concurrent or exclusive jurisdiction is evidence of any matter which comes collaterally in question, though within their jurisdiction, nor of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment." 2 *Smith's Lead. Cases*, 424, and notes. It seems, therefore, that to make out the defence at least three things are necessary: the parties must be the same, or their privies; the subject-matter must be the same, and the precise point must have been ruled.

Was the judge right in holding that Sarah J. Hart, the plaintiff, was a privy in interest with A. A. Hart so as to be bound by whatever in the case of *Bates* v. *Hart* was decided against him? The parties in this action are certainly not the same as in that of *Bates* v. *Hart*, nor is the cause of action the

same.  In the *first* Bates, Jr., sued Hart for land, and in this Sarah J. Hart sues John Bates and others to set aside as fraudulent the deed to Bates covering this same land.  The defence therefore cannot prevail as a plea in bar, but it may be offered in evidence as an estoppel of the plaintiff, Sarah J., if she is a privy of A. A. Hart, the defendant in the first action, and the precise question she now makes was then decided against him.

Privies are defined to be "those who are partakers or have an interest in any action," and are of three kinds—in blood, in law, and in estate.  Sarah J. Hart was neither privy in blood nor law of A. A. Hart; was she a privy in estate?  She purchased the judgments from A. A. Hart, and as his assignee was his privy as to all questions affecting these judgments, and is bound by all that was binding against him *in regard to them;* but that does not make her his privy as to any other matter. Nothing decided in the case of *Bates* v. *Hart* touched the judgments.  It is true that at the time of the trial they were the property of A. A. Hart, and that circumstance may confuse the mind; but the question decided had no connection with the judgments.  The only question decided was *one of location* as to what land passed under the words, "the homestead of John Bates, Sr."

A. A. Hart did not defend as owner of the judgments but as purchaser of the land.  Indeed, at the time he purchased "the homestead" under these judgments he did not own them. He afterwards purchased them for another purpose and owned them at the time of the trial, but that was an accidental circumstance, which cannot affect his assignee.  If Hart himself had instituted these proceedings it would have been in a character different from that in which he defended the case of Bates.  "A judgment against one as executor does not bar his individual claim."  *Charles* v. *Charles*, 13 *S. C.* 385.

But suppose that Sarah J. Hart, as assignee of the judgments, was a privy of A. A. Hart, not only as creditor but as purchaser, the question then next in order is whether the fraud alleged in this case was conclusively decided in the former suit. The argument for Bates is that he could recover a parcel of the land only upon the assumption that his deed from his

father was *bona fide*, and whether in the former suit Hart made that question or not *he might have done so*, and the mere omission to avail himself of a defence which the nature of the case and the scope of the pleadings allowed estops him and his privies from making that question in another action.

The form of the proceeding in the two cases was certainly not the same. The first was an action at law for land, and this, as stated, is a proceeding in the nature of a bill in equity to set aside a deed of that land *for fraud*. It may be that the defence of *fraud* might have been made in the first suit. Fraud vitiates everything, and in one sense all courts take cognizance of it ; but the jurisdiction to set aside a deed for fraud is most appropriately exercised through equitable proceedings. In the case of *Bradley* v. *McBride, Rich. Eq. Cas.* 204, it was held that after a trial at law, in which lands were recovered, the losing party might go into equity, and have the deed upon which the recovery was based, set aside for a fraud perpetrated before the first trial. Judge O'Neall said, " The recovery in equity is more convenient, and as the jurisdiction of this court over this class of cases is unquestionable, I think the recovery at law cannot conclude the complainant."

But both law and equity are now administered in the same court, and there is not the same difference in the forms of proceeding as formerly. It seems to be now settled that, though the proceeding is in another jurisdiction and for a different purpose, the judgment will be conclusive, provided the court has jurisdiction and the judgment was directly on the point. " A decision by a court of competent jurisdiction is binding upon all other courts of concurrent power." *Maxwell* v. *Connor*, 1 *Hill Ch.* 22.

It is claimed, however, as a sequence of this rule that the defence of *res judicata* extends to every question *which could have been made*, whether it was considered or not. There are cases which seem to go to that extent ; but we think the decided preponderance of authority maintains the more reasonable doctrine, " that a judgment is not technically conclusive of any matter, if the matter is not such that it had of *necessity to be determined* before the judgment could have

been given—that it was not merely collateral, nor to be inferred by argument from the judgment." 6 *Wait's A. & D.* 785, citing *Hunter* v. *Davis,* 19 *Ga.* 413, and other cases. Or in the language of Mr. Justice Miller of the U. S. Supreme Court, in his dissenting opinion in the case of *Aurora City* v. *West,* 7 *Wall.* 106 : "The rule is, that when a former judgment is relied on, it must appear from the record that *the point in controversy was necessarily decided in the former suit, or be made to appear by extrinsic proof that it was in fact decided.* This is expressly ruled no less than three times within the last eight years by this court, viz., in the *Steam Packet Co.* v. *Sickles,* 24 *How.* 333 ; *Same* v. *Same,* 5 *Wall.* 580 ; *Miles* v. *Caldwell,* 2 *Wall.* 35."

The record in the case of *Bates* v. *Hart* did not show that the question of *fraud* in the deed to Bates had been necessarily decided, nor was it shown as matter of fact by extrinsic proof. On the contrary, there was proof tending to show that neither the plaintiff nor her assignors ever heard of *the fraud* in the deed until 1878, a short time before this proceeding was instituted. The judge "remarked that while there was no proof of such issue being made and determined, he took it for granted that it had been done." It surely cannot be that a judgment must be considered as conclusive not only of the matters actually decided by it, but of every question *which by probability* could have *been made in the trial,* including that of fraud in one of the deeds in evidence, fair on its face, which fraud was not then known to the party now to be estopped, for not then alleging it.

It is true the deed had been regularly recorded, and the plaintiff must be held to have had notice, but surely notice as it stood expressed to be for valuable consideration. The fraud had then been perpetrated, but it did not appear on the face of the deed. The registry gave no clue to it, but on the contrary tended to conceal it by misrepresentation. The fraud in the deed was conceded by the party who now claims advantage from having been able to keep the secret so successfully as to escape discovery. It was in its character collateral and exceptionable.

Fortunately fraud is not universal. The charge of *mala fides* is not expected to be made as matter of course against every deed offered in evidence. There is yet some faith in fair dealing. The general rule certainly is, that deeds expressed to be for valuable consideration are what they purport to be. The charge of laches cannot justly be brought against one for omitting to assail a deed *for fraud*, when he had no knowledge of the facts constituting such fraud. To assail a deed for fraud without satisfactory evidence would be inexcusable. It cannot be necessary for every suitor to assail as fraudulent every deed proved on the other side in every case in order to escape the penalty of being precluded from doing so at a future time, in case he should discover evidence that would justify such charge.

In the great leading case of *Le Guen* v. *Gouverneur & Kemble*, 1 *John. Cas.* 494, after holding the doctrine that a judgment is not only final as to matters actually determined, but as to every other matter which under the pleadings might have been determined, Mr. Justice Radcliffe said, "It is, however, admitted that cases in which there are no laches or neglect form exceptions to the rule. Thus where a party has no notice of a defence to which he is entitled, or can make it appear that material evidence has been subsequently discovered which would probably support that defence and alter the determination, he ought not to be concluded."

The Court of Vermont has held as follows : " The rule is, that when the jurisdiction of the courts of law and equity is entirely concurrent, the adjudication of the former is conclusive upon the latter, *except in the cases of new matter discovered subsequently to the trial at law, or of fraud by the opposite party*, or of mistake or accident. But when a party has equitable rights not cognizable in a court of law but only in equity, a court of equity will grant him relief from such adjudication." *Dunham* v. *Donner*, 31 *Verm.* 249.

We think it was error to hold that the plaintiff was estopped from making the question of fraud in the deeds.

The statute of limitations is not pleaded, but lapse of time and adverse possession are informally set up as matters of de-

fence. The judgments now owned by the plaintiff were obtained *in May*, 1869, and this action was brought *January* 8, 1879, within less than ten years. Besides, the statute did not commence to run until the discovery of the facts constituting the fraud. *Beattie* v. *Pool*, 13 *S. C.* 379.

The judgment of this court is that the judgment of the Circuit Court be reversed and the case remanded for a new trial.