This action was commenced in the district court of Creek county by defendants in error, as plaintiffs, against W. R. Crowe and W. J. Miller for the recovery of an undivided one-half interest in the allotment in Creek county of William Eufaula by reason of defendants in error being legal heirs of the said Eufaula.
The parties will be mentioned as they appeared below.
The plaintiffs alleged in their petition that William Eufaula was a full-blood Creek Indian, duly enrolled as such; his death on or about December 7, 1899; selection of his allotment on or about October 17, 1901; his survival by the sole and only heirs, Eliza Eufaula, his wife, and Belcher and Jacob Ispocogee, his nephews; the death of Eliza Eufaula on June 7, 1907, and survival of her sole and only heirs, being Phillip Jack, Euchee Tom, Silla Warnarkee, and Wicey Warnarkee, all full-blood enrolled Indians of the Creek Nation; the death of Phillip Jack in 1918, leaving as his sole heirs Fannie, Susie, Anne, Sam, and Wiley Jack, his minor children, and Dillie Jack, his wife.
Defendants answered, admitting all the material allegations in the petition contained; that title to lands in controversy, the allotment of William Eufaula, passed to them by reason of a deed of plaintiffs, executed and approved as required by law.
The facts concerning the execution of the deed are not in dispute. The facts, as disclosed by the pleadings, are that on August 14, 1907, Phillip Jack, Euchee Tom, Silla Warnarkee, and Wicey Warnarkee, full-blood heirs of William Eufaula and Eliza Eufaula, executed a deed to Timmie Fife and Joseph Bruner for an undivided one-half interest in the allotments of William and Eliza Eufaula, containing 160 acres each, for a consideration of $300, — $50 paid and the balance to be paid when said deed was approved. This deed was forwarded to the Secretary of the Interior for approval. On May 26, 1913, the Secretary of the Interior refused approval. On July 15, 1911, Fife and Bruner quitclaimed their interest in *Page 154 
said lands to James Dunlap. On September 30, 1913, Dunlap conveyed by warranty deed his interest in said lands to Clint S. Harper, and on April 10, 1918, Harper, by warranty deed, conveyed the land to W. R. Crowe. On January 2, 1909, the United States brought suit in federal court at Muskogee on behalf of the full-blood Indian grantors to cancel said deed against the grantees, Fife and Bruner, the litigation being a part of what is known as the 30,000 lawsuit. Fife and Bruner filed a disclaimer in said action, and judgment canceling said deed of 1907 was entered in said federal court on June 7, 1919.
On September 26, 1913, the plaintiffs having renewed negotiations with Bruner and Fife for the sale of the lands, and Bruner and Fife having retained possession of the lands notwithstanding their disclaimer filed in the federal court, and Phillip Jack having filed a petition in the county court of Creek county seeking approval of the deed of conveyance to the lands in controversy, and plaintiffs appearing in person in said court, likewise appearing in person were Fife and Bruner, and the Act of Congress of May 27, 1908, removing restrictions upon the lands of the Five Civilized Tribes, having transferred the right and jurisdiction to approve deeds conveying the allotments of deceased Indians executed by full-blood heirs from the Secretary of the Interior to the proper county court, the said county court approved a deed of conveyance as aforesaid; the deed approved being the instrument written in 1907, the same being returned by the Secretary of the Interior to the grantors and a new consideration having passed.
The plaintiffs filed their motion for judgment on the pleadings, and judgment was accordingly rendered, and defendants have perfected an appeal to this court.
It is admitted by defendants that the written conveyance dated August 14, 1907, having been disapproved by the Secretary of the Interior, was, as a conveyance, a nullity, but it is contended that the sale and conveyance on September 26, 1913, as approved by the county court, was not void for the reason that the parties used as evidence of such sale and conveyance the instrument of the date of August 14, 1907, theretofore returned by the Secretary of the Interior to the possession of the vendors.
It is further contended that the decree of the United States court of June, 1919, in Equity Case No. 485, being one of the 30,000 lawsuits, is not conclusive upon the rights of the parties to this action.
As to the first contention, we think the real issue is whether the sale and conveyance approved by the county court September 26, 1913, was a sale of that particular date or as of the date of August, 1907. Approval of a sale as of the date of August, 1907, is exclusively within the jurisdiction of the Secretary of the Interior, but if the sale and conveyance is of the date of September, 1913, the county court had exclusive authority to approve the same.
Considering the answer of defendants in the judgment on the pleadings, we find a sale as of the date of September 26, 1913, sufficiently pleaded, yet the pleadings as a whole lead us back to the proposition as to whether or not a prior void instrument may be used as the evidence, the token, the deed of conveyance of the lands at the latter sale.
The date of the delivery rather than the date recorded in the instrument is controlling, in our judgment.
In 8 R. C. L. 1013, it is said:
"Primarily, a deed takes effect from its delivery, which, to most intents and purposes, is merely the converse statement of the rule that a deed does not become effective until delivery, and which is aptly illustrated by the holding that a deed executed and acknowledged on Sunday is valid when delivered on a secular day. * * * The rule is also stated that the presumption of contemporaneity of date and delivery arises when there are no indications of fraud or falsity, on the face of the deed. * * * In any event the presumption is indulged only in the absence of proof as to the actual time of delivery, and if such proof is presented and the presumption is rebutted, and the execution of the deed must then be referred to the time when the testimony shows that the grantor parted with its possession for the purpose of giving effect to it, and in such a manner as to deprive him of the right to recall it, from which it follows that the grantor is not estopped to show that the deed was executed at a time different from the date, and the real time of execution may be shown by parol testimony of either party."
In McCuan et al. v. Gordon et al., 44 Okla. 254,144 P. 348, it is said:
"A deed does not take effect or operate to pass title until it is delivered. Powers v. Rude, 14 Okla. 381, 79 P. 89."
It is uncontroverted that until September 26, 1913, there was no valid delivery of the deed in question sufficient to pass title because of the incapacity of the grantors without the approval of the Secretary of the Interior.
8 R. C. L. 989, states the rule as follows:
"Technically there cannot be two deliveries *Page 155 
of the same deed, for if the first is valid, nothing passes by the second; but if a deed is invalid when delivered, there is in effect no delivery and no deed, and if the cause of the invalidity be removed, a redelivery will be effectual. Thus, if a deed, invalid because of the grantor's disability, has been delivered, it can be made effectual by redelivery after the disability is removed." Jourden v. Jourden (Pa.) 11 Am. Dec. 724; Purseley v. Hayes, 22 Iowa, 11, 92 Am. Dec. 350; Newlin v. Osborne (N.C.) 67 Am. Dec. 269.
In the case of Carey et al. v. Bewley et al., 101 Okla. 235,224 P. 990, it was held that where full-blood Indian heirs executed a deed in 1906, which was void because not approved by the Secretary of the Interior in accordance with Act of Congress of April 26, 1906, and where such heirs executed another deed to the same person or his assignee in 1911 and the same was approved by the county court having jurisdiction of the estate of the deceased allottee, the latter deed was not void because of lack of consideration, but was, under the facts therein disclosed, a valid conveyance.
In Chupco v. Chapman, 76 Okla. 201, 170 P. 259, it is said:
"In the year 1907 adult full-blood Creek Indian heirs executed conveyances to inherited lands that were not approved by the Secretary of the Interior, as provided by section 22 of the Act of Congress of April 26, 1906. In the year 1910 the same heirs executed other deeds to the land to the same grantee for a recited consideration. The petition for the cancellation of said last-named deeds alleged that the same were taken in confirmation and ratification of the prior void deeds. Held, that the conveyances, having been approved by the proper court, as provided by the Act of Congress of May 27, 1908, were valid, and conveyed title to the land."
It is then apparent that had a new deed been used in the conveyance of 1913, no controversy would have occurred as to this issue. It is urged by counsel for plaintiffs that Groom v. Dyer, 72 Okla. 99, 179 P. 12, is controlling, but we think that case should be distinguished from the facts here. In that case there was no contention that the deed of the date 1907 was later delivered to evidence a conveyance of a later date. In that case the petition filed in the county court seeking approval of the deed based its contention upon a conveyance of September 30, 1907, whereas in the case at bar all parties concede that the first attempted conveyance in 1907 is void, but join issue upon the conveyance of 1913 upon the medium, the use of the scroll of 1907, which was in the hands of the grantors, which described the lands, the parties, the consideration and inaccurately the date.
Groom v. Dyer, supra, touched upon the facts of this case wherein it used this language:
"In the contemplation of the act of Congress the conveyance is dead until the county judge of the proper county, by his approval, makes alive and active that which before was dead and of no effect."
2. We now consider whether or not the decree of the federal court of June, 1919, in Equity Case No. 485, is conclusive as to the rights of the parties in the action at bar so as to divest these defendants of their title to the lands in controversy.
From an examination of the record, we do not find the petition in the action in the federal court, but from the terms of the decree we find that the suit was in equity for the cancellation of the deed of August 14, 1907. Apparently no amendment to the petition was filed so as to present to that court the validity of the sale and conveyance of September 26, 1913, and the same was not an issue before that court, and the parties defendant had disclaimed any interest in the issue presented, i. e., title to the deed of 1907, as disapproved by the Secretary of the Interior.
The issues in the case before the federal court were made up by the bill filed by the government, as complainant, whatever pleadings, if any, filed by Charles Bagg et al., defendants, and the disclaimer of Joseph Bruner and Timmie Fife, who were designated as special defendants. No doubt these issues were made up in the year 1909. Fife and Bruner, as heretofore recited, went out of the case as it then existed, in effect disclaiming any interest in title to the lands under the deed of 1907, as it then existed, when judgment could have been given. The judgment rendered in 1919 admits every issuable fact stated in the bill. From an examination of the judgment or final decree we conclude that nothing was alleged in the bill concerning the transactions of the parties for the year 1913, and under the circumstances we are of the opinion that the judgment is conclusive only so far as it determines matters put in issue or admitted in the pleadings. New v. Smith (Kan.) 119 P. 380.
The basis upon which an adjudication bars further action is that the same question was actually and directly in issue and judicially determined in a former suit between the same parties or their privies. See Keane v. Pittsburg Lead Mining Company (Idaho) *Page 156 
105 P. 60; Bird v. Winyer (Wash.) 87 P. 259; Shepherd v. Kansas City (Kan.) 105 P. 531.
In the case of International Harvester Co. of America v. Cameron, 25 Okla. 256, 105 P. 189, this court, speaking through Mr. Justice Williams, said:
"The only allegations of the pleadings fixed by the default are those traversable. [Citing] Weese v. Barker, 7 Colo. 178, 2 P. 919; McKinney v. State, 101 Ind. 355."
The burden of showing the matters formerly adjudicated with sufficient certainty by the record or extrinsically is upon the party who claims the benefit of the former judgment. Prall v. Prall (Fla.) 26 L. R. A. (N. S.) 577.
The transactions of the parties in the year 1913 were not within the issues as joined and were not susceptible of proof under the issues as they existed at the time judgment could have been rendered. See Hart v. Bates, 17 S.C. 35.
"In order to make a matter res adjudicata there must be the concurrence of the four conditions following: (1) Identity in the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action or their privies; (4) identity of the quality in the person for or against whom the claim is made." Turner Tp. v. Williams, 97 N.W. 842, 17 S.D. 548; State v. Kemmerling, 111 P. 443,83 Kan. 383; Creegan v. Hyman, 46 So. 952 (Miss.); Seigfried v. Boyd, 85 A. 72, 237 Pa. 55.
We have no fault to find with the rule announced in Baker v. Leavitt, 54 Okla. 70, 153 P. 1099, wherein it states:
"A final judgment of a court of competent jurisdiction is conclusive between the parties and their privies in a subsequent action involving the same subject-matter, not only as to all matters actually litigated and determined in the former action, but as to all matters germane to issues which could or might have been litigated and determined therein."
We presume the action in the federal court was based upon a bill in equity to cancel the instrument of 1907. The instant action began in ejectment for the possession of lands and the quieting of title thereto resulting in a judgment of recovery of the lands, possession thereof, and cancellation of the deed of 1907, and when a second suit is upon a different cause of action, but between the same parties as the first, the judgment in the first suit operates as an estoppel in the second suit only as to every point and question that was actually litigated and determined in the first, and the first judgment is not conclusive as to other matters that might have been, but were not litigated or decided.
The test of the identity of causes of action for the purpose of determining the question or res judicata is the identity of the facts essential to the maintenance of the actions.
For the reasons herein expressed, we are of the opinion that the judgment of the lower court was erroneous, and the same is hereby reversed, and in view of the facts that there is no controversy as to the controlling facts in this case, the cause is remanded, with directions to render judgment in favor of the defendants and against the plaintiffs, sustaining defendants title to the lands in controversy.
BRANSON, V. C. J., and MASON, PHELPS, LESTER, and HUNT, JJ., concur. NICHOLSON, C. J., dissenting.