**STATE OF OKLAHOMA ex rel. COMMISSIONERS OF LAND OFFICE v. UNITED STATES.**

No. 3247.

Circuit Court of Appeals, Tenth Circuit.
May 10, 1946.

Bruno Miller, of Oklahoma City, Okl. (Walter Marlin and Everett H. Welborn, both of Oklahoma City, Okl., on the brief), for appellant.

Fred W. Smith, Atty., Department of Justice of Washington, D.C. (J. Edward Williams, Acting Head, Lands Division, of Washington, D.C., Cleon A. Summers, U.S. Atty., of Muskogee, Okl., and Roger P. Marquis, Atty., Department of Justice, of Washington, D.C., on the brief) for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

Saul Folsom, a full-blood enrolled Choctaw Indian, was allotted certain tribal land in Bryan County, Oklahoma. The allottee died in June, 1904, at less than three years of age. The patent issued in December, 1904. Though then deceased, the allottee was named as the grantee in the patent. The heirs of the allottee at the time of his death were his father, Joseph Folsom, and his mother, Sissie Folsom. Joseph Folsom died in 1905, and his interest in the land descended to his widow, Sissie Folsom, and his sons, Wilson Folsom, Louie Folsom, and Joe Mitchell Folsom. Joe Mitchell Folsom died in 1906, and his interest in the land passed by descent to his mother, Sissie Folsom, and his brothers, Wilson Folsom and Louie Folsom. In 1920, Wilson Folsom and Louie Folsom filed in the state court an action against Sissie Folsom to partition the land; and, by decree entered in 1921 it was partitioned in kind, the part in controversy in this action being set aside to Sissie Folsom. Sissie Folsom married M. L. Pierce; and in 1927, they executed a mortgage covering the land in controversy to the State of Oklahoma and the Commissioners of the Land Office of the state to secure payment of a promissory note. The mortgage was not approved by the county court or the county judge of Bryan County, or by the county court or county judge of any other county in Oklahoma. The State and the Commissioners of the Land Office filed in the state court an action to foreclose the mortgage; the United States was not a party; a decree of foreclosure was entered; the land was sold to the State; the sale was confirmed; a sheriff's deed was issued; and the State took possession of the land.

The United States, in its own behalf and on behalf of Sissie Pierce, nee Folsom, in-

stituted in the United States Court this action against the tenant of the State for possession of the land. Sissie Pierce, nee Folsom, died; and her heirs were substituted as parties plaintiff. By leave of court, the State on relation of the Commissioners of the Land Office intervened; denied ownership of the land in Sissie Pierce, nee Folsom; pleaded adverse possession; and by cross complaint sought to quiet its title. By amended complaint the United States sought judgment against the State and the Commissioners of the Land Office quieting title in the heirs of Sissie Pierce, nee Folsom. Judgment was entered quieting title in the State. The judgment was reversed and the cause remanded. United States v. Fuston, 143 F.2d 76, certiorari denied 323 U.S. 768, 65 S.Ct. 121, 89 L.Ed. 614. Thereafter, the State filed an amended answer and cross complaint in which it was alleged among other things that restrictions against alienation of the land were removed by operation of law upon the death of the allottee, and in the alternative that if the land was not free of restrictions by operation of law, the restrictions were removed by order of the Secretary of the Interior prior to the execution of the mortgage to the State. Judgment was entered quieting title in the heirs of Sissie Pierce, nee Folsom, and the State appealed.

■ The first contention argued is that the decree rendered by the state court in the action to foreclose the mortgage is res judicata here in respect to the validity of the mortgage. It is the general rule that where a second suit between the same parties or their privies is on the same cause of action as the first, the final judgment in the prior action is conclusive as to all matters actually litigated and as to every issue, claim, or defense which might have been presented; and that where the subsequent suit between the same parties or their privies is on a different cause of action, the judgment in the earlier action operates as an estoppel only in respect to the issues, claims, or defenses which were actually litigated and determined. Crowe v. Warnarkee, 114 Okl. 153, 244 P. 744; Brown-Crummer Investment Co. v. City of Purcell, Okl., 10 Cir., 128 F.2d 400; Bowles v. Capitol Packing Co., 10 Cir., 143 F.2d 87.

■ A judgment entered in an action brought by the United States in its own behalf and on behalf of an Indian ward is binding upon the United States and the Indian whom it represents in the litigation. Heckman v. United States, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820; Vinson v. Graham, 10 Cir., 44 F.2d 772, certiorari denied 283 U.S. 819, 51 S.Ct. 344, 75 L.Ed. 1435; White v. Sinclair Prairie Oil Co., 10 Cir., 139 F.2d 103, certiorari denied 322 U.S. 760, 64 S.Ct. 1278, 88 L.Ed. 1588. But in the absence of notice served in accordance with section 3 of the Act of April 12, 1926, 44 Stat. 239, 240, a judgment in an action involving property in Oklahoma of a member of the Five Civilized Tribes of Indians is not binding upon the United States in its capacity as guardian of the Indian unless the United States is a party to the action. Bowling v. United States, 233 U.S. 528, 34 S.Ct. 659, 58 L.Ed. 1080; Privett v. United States, 256 U.S. 201, 41 S.Ct. 455, 65 L.Ed. 889; Sunderland v. United States, 266 U.S. 226, 45 S.Ct. 64, 69 L.Ed. 259; United States v. Hellard, 322 U.S. 363, 64 S.Ct. 985, 88 L.Ed. 1326; Drummond v. United States, 324 U.S. 316, 65 S.Ct. 659, 89 L.Ed. 969; Town of Okemah, Okl., v. United States, 10 Cir., 140 F.2d 963.

■ Coming to the question whether the land was restricted against alienation at the time of the execution of the mortgage to the State, it is conceded by the Government that no restrictions existed prior to April 26, 1906. Harris v. Bell, 254 U.S. 103, 41 S.Ct. 49, 65 L.Ed. 159. But in presently material respect, section 22 of the Act of April 26, 1906, 34 Stat. 137, 145, provided in effect that the heirs of a deceased member of the Five Civilized Tribes to whom a patent had issued for his share of the land of the tribe to which he belonged could sell and convey the land inherited from the decedent, but that conveyances by heirs who were full-blood Indians were subject to the approval of the Secretary of the Interior. All members of the Folsom family, to whom reference has already been made, were Choctaws of the full-blood; and after the Act of 1906, supra, became effective, the land was subject to the restrictions against alienation prescribed in section 22. Brader v. James, 246 U.S. 88,

38 S.Ct. 385, 62 L.Ed. 591; Talley v. Burgess, 246 U.S. 104, 38 S.Ct. 287, 62 L.Ed. 600.

Section 9 of the Act of May 27, 1908, 35 Stat. 312, 315, provides that the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon alienation of the allottee's land "Provided, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee * * *." And it contains a second proviso, but it does not have material bearing here. That section is practically a substitute for section 22 of the Act of 1906. Stewart v. Keyes, 295 U.S. 403, 55 S.Ct. 807, 79 L.Ed. 1507. And after it became effective, the land involved in this action, being owned by full-blood Indian heirs of the allottee, was subject to the qualified restrictions against alienation which it created. Parker v. Richard, 250 U.S. 235, 39 S.Ct. 442, 63 L.Ed. 954; Harris v. Bell, supra; Stewart v. Keyes, supra; Holmes v. United States, 10 Cir., 53 F.2d 960; United States v. Mid-Continent Petroleum Corporation, 10 Cir., 67 F.2d 37, certiorari denied Hosey v. Mid-Continent Petroleum Corp., 290 U.S. 702, 54 S.Ct. 346, 78 L.Ed. 603; United States v. Goldfeder, 10 Cir., 112 F.2d 615.

The State argues however that in the circumstances present here, the land was neither allotted land nor inherited land in the ordinary sense of those terms; that it was land which would have been allotted to a certain Indian had he lived; that because of his death, it was granted to certain other Indians in his stead; that at his death, title vested in such other Indians free and clear of restrictions; and that subsequent legislation could not affect the title in respect of its freedom of restrictions against alienation. But these contentions are untenable. The heirs of this allottee took the land as an inheritance from him, not as allottees in their own right, or otherwise, even though the patent issued after his death. Harris v. Bell, supra; Stewart v. Keyes, supra. And Congress in the exercise of its plenary authority as guardian of its Indian wards has power to impose or reimpose restrictions against alienation of land owned by full-blood Indian heirs. Tiger v. Western Investment Co., 221 U.S. 286, 31 S.Ct. 578, 55 L.Ed. 738; Brader v. James, supra; McCurdy v. United States, 246 U.S. 263, 38 S.Ct. 289, 62 L.Ed. 706; Taylor v. Tayrien, 10 Cir., 51 F.2d 884, certiorari denied 284 U.S. 672, 52 S.Ct. 127, 76 L.Ed. 569; Hickey v. United States, 10 Cir., 64 F.2d 628; Whitchurch v. Crawford, 10 Cir., 92 F.2d 249; Murray v. Ned, 10 Cir., 135 F.2d 407, certiorari denied 320 U.S. 781, 64 S.Ct. 188, 88 L.Ed. 469.

The remaining contention advanced by the State is that if the Act of 1908, supra, has application, under section 1 thereof the Secretary of the Interior has power to remove restrictions against alienation, and that in respect of this land he did remove the restrictions by order issued in 1916—prior to the execution of the mortgage to the State. Sissie Pierce, nee Folsom, submitted an application for the removal of restrictions and the Secretary issued an order of removal. But the application and the order, considered together, make it crystal clear that they related solely and exclusively to land which had been allotted to Sissie Folsom, as allottee, and did not concern themselves in anywise with the land allotted to Saul Folsom. Since the order of the Secretary did not apply to the land in controversy, we pretermit to a necessitous occasion in the future the exploring of the question whether after the Act of 1908 became effective the Secretary was vested with authority to remove restrictions against alienation upon allotted lands owned by full-blood Indian heirs of the deceased allottee.

The judgment is affirmed.